IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 09-CV-2292 KHV/KGS |
| | ) **Jury Trial Demanded** |
| Z³ TECHNOLOGY, LLC, | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT

COMES NOW the plaintiff Digital Ally, Inc. ("Digital") and for its claims for relief against defendant Z³ TECHNOLOGY, LLC ("defendant") alleges and states as follows:

### PARTIES AND JURISDICTION

1. Digital is a corporation organized and existing under the laws of the State of Nevada, having its principal place of business at 7311 W. 130th Street, Overland Park, Johnson County, Kansas 66213.

2. Defendant is a limited liability company organized and existing under the laws of the state of Nebraska, having its principal place of business at 1331 SW 84th Street, Lincoln, Nebraska 68532.

3. Defendant is subject to *in personam* jurisdiction in the state of Kansas pursuant to Kan. Stat. Ann. § 60-308(b) for the reasons, *inter alia*, that it has transacted business in Kansas, has entered into express or implied contracts with a resident of this state to be performed in whole or in part in this state and has otherwise engaged in substantial, continuous and systematic

contact with this state sufficient to permit the exercise of such jurisdiction in compliance with U.S. Const. Arts. V and XIV.

4. This Court has subject matter jurisdiction herein pursuant to 28 U.S.C. § 1332(a) for the reason that this is a civil action between citizens of different states, wherein the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

5. This is, in part, an action for declaratory judgment in a case of actual controversy otherwise within the jurisdiction of this Court, within the meaning of 28 U.S.C. § 2201.

6. Venue is proper herein pursuant to 28 U.S.C. § 1391 for the reason, *inter alia*, that this is a judicial district in which a substantial part of the events or omissions giving rise to Digital's claims occurred.

## ALLEGATIONS COMMON TO ALL COUNTS

7. Digital is a publicly owned company, the common shares of which are traded on one or more national exchanges.

8. Digital designs, manufactures and distributes digital videographic devices, the principal consumers of which are law enforcement agencies in the United States and elsewhere, private security companies and the Armed Forces of the United States.

9. Defendant is or claims to be a designer, developer and/or distributor of "a broad range of end equipment solutions, embedded software, engineering services and development tools" including, among other things, various kinds and types of "modules" used or useable in the design, development and manufacture of digital videographic devices of the kind manufactured and distributed by Digital.

10. On or about November 1, 2008, defendant and Digital, through its former Executive Vice President of Engineering & Production, Mr. Robert Haler ("Haler") made and

entered into a certain Production License Agreement denominated "PLA-2008.10.31" ("**PLA-2008**"), a copy of which is attached to this Complaint as **EXHIBIT 1** and by reference incorporated herein.

11. Under the terms of **PLA-2008**, defendant agreed, *inter alia*, to design, manufacture, sell and provide 1,000 "modules" to Digital, identified as Module Z3-DM355-MOD-04-SP2 ("**MOD-04-SP2**").

12. As provided in ¶ 3(b) of **PLA-2008**, as it appears on page 2 thereof, defendant warranted expressly that "FOR ONE HUNDRED EIGHTY (180) DAYS AFTER RECEIPT BY" Digital "OF THE"" **MOD-04-SP2** units, such "LICENSED … HARDWARE SHALL BE FREE FROM DEFECTS IN MATERIAL AND WORKMANSHIP AND WILL PERFORM SUBSTANTIALLY IN ACCORDANCE WITH THE SPECIFICATIONS AND RELATED DOCUMENTS PROVIDED TO" Digital.

13. Pursuant to **PLA-2008**, defendant delivered and Digital received 200 **MOD-04-SP2** on or about January 15, 2009 followed by a further 800 **MOD-04-SP2** units on March 1, 2009.

14. In performance of its own duties and obligations under **PLA-2008**, Digital has paid the sum of $140,000 to defendant consisting of $100,000 paid in purchase of the 1,000 **MOD-04-SP2** units delivered to it by defendant, and a further $40,000 paid in exchange for a "license" authorizing Digital to use and employ the 1,000 **MOD-04-SP2** units in the manufacture and sale of its own videographic devices.

15. Each of the 1,000 **MOD-04-SP2** units sold and delivered to Digital and otherwise received by Digital within 180 days prior to the filing of this action was and remains defective,

deficient, non-conforming and unsuited for use in the manufacture of Digital's videographic products for each of the following reasons, among others:

    a.    Each of the units fails to meet and conform to the plans, specifications, design parameters and requirements within which they were to be designed, manufactured and sold to Digital;

    b.    A signal/recording defect corruption known as "pink noise" is present on the encoded video produced by each of these units;

    c.    The USB driver is non-functional;

    d.    The SDHC driver is not consistent in its functioning and response among all of the unit board assemblies and in some instances no SD card is detected and the unit cannot be mounted;

    e.    The file system is limited to seven MV;

    f.    The audio produced or reproduced by the units is not full duplex.

16.    Shortly after the execution of **PLA-2008**, Digital adopted and instituted a written "**Signature Authorities Policy**" designed to identify and define the authority of its officers and employees to bind or commit Digital to, *inter alia*, "legal obligations".

17.    Such "**Signature Authorities Policy**" was made and adopted by Digital in order to protect its business, assets and shareholders, to reduce the possibility that its assets would be used to purchase unnecessary or deficient products from unqualified or unreliable suppliers, and to prevent possible corrupt and collusive agreements between officers or executives of Digital acting alone and purported suppliers.

18.    A copy of Digital's "**Signature Authorities Policy**" effective December 15, 2008 is annexed to this Complaint as **EXHIBIT 2** and by reference incorporated herein.

19.    As specified in the "**Signature Authorities Matrix**" which appears on page 2 of the "**Signature Authorities Policy**", any purchase by Digital, whether for inventory purposes or

of capital assets for a price exceeding $250,000 requires the signature of not one but two of the officers and/or executives identified in the "**Matrix**" in order to bind and commit Digital to such obligation.

20. On or about January 2, 2009, and thus during the time that Digital's "**Signature Authorities Policy**" was in force and effect, Digital's former EVP, Haler, purported to make and enter into a further "Software/Hardware Design and Production License Agreement" with defendant denominated "**PLA-2009.01.02**" ("PLA-2009").

21. A copy of **PLA-2009** is annexed to this Complaint as **EXHIBIT 3** and by reference incorporated herein.

22. Notwithstanding Digital's "**Signature Authorities Policy**" and defendant's actual and/or constructive knowledge of such "**Signature Authorities Policy**", the purported agreement denominated **PLA-2009** was executed by Haler, acting alone, and does not bear the signature or other authorization of any of the other officers or executives identified in the "**Signature Authorities Policy**".

23. Accordingly, the purported execution of **PLA-2009** by Haler, acting alone, was unauthorized, *ultra vires*, and in all respects insufficient to bind or commit Digital to any duty, obligation or course of performance thereunder.

24. In early April, 2009, officers and executives of Digital other than Haler discovered and determined that Haler had entered into or purported to enter into **PLA-2009**, acting alone, in violation of the "**Signature Authorities Policy**" and on April 10, 2009 informed defendant, in writing, that defendant should, among other things, cease all activity with respect to **PLA-2009**.

25. In response, defendant informed Digital that it was entitled to payment, immediately, of the sum of $755,000, consisting of all sums that would or could become due and payable to defendant had **PLA-2009** been or become a valid and enforceable agreement and had defendant performed fully thereunder.

### COUNT I
### (Breach of Contract, PLA-2008)

26. Digital restates and incorporates herein, *seriatim*, the allegations contained in ¶¶ 1-25 inclusive hereinabove.

27. Digital has fully performed each of its duties and obligations under **PLA-2008**.

28. Defendant has failed to keep and perform its own duties and obligations under **PLA-2008** including its warranties and is in breach of **PLA-2008**.

29. As a direct and proximate result of defendant's breach of **PLA-2008**, Digital has suffered actual loss, injury and damage in an amount exceeding $100,000.

WHEREFORE, upon Count I of its Complaint, Digital requests the following relief:

A. That the Court make and enter its Judgment in favor of plaintiff Digital Ally, Inc. and against defendant $Z^3$ Technology, LLC for actual damages in an amount exceeding $100,000 together with interests and costs herein incurred and expended; and

B. That Digital have such other and further relief as may be justified in the premises.

### COUNT II
### (Rescission, PLA-2009)

30. Digital restates and incorporates herein, *seriatim*, the allegations contained in ¶¶ 1-29 inclusive hereinabove.

31. Haler's purported execution of **PLA-2009** for and on behalf of Digital was unauthorized, *ultra vires*, and of no force or effect.

32.     **PLA-2009** is, as to Digital and otherwise with respect to each of the purported parties to that Agreement, void, unenforceable and of no force or effect.

33.     In addition, and/or in the alternative, **PLA-2009** is the product of a mutual mistake of and by Digital and defendant concerning, *inter alia*, Haler's capacity to bind Digital and/or Digital's need and/or desire to purchase goods or services of the kinds described or purportedly described in **PLA-2009**.

34.     In addition or in the alternative, **PLA-2009** is void for failure of consideration for the reason that Haler could not agree to deliver and did not deliver, for or on behalf of Digital, any of the consideration or purported consideration specified therein, nor absent Digital's actual agreement to require and receive the same could defendant agree to deliver or deliver, in fact, to or for the benefit of Digital any of the consideration specified therein.

35.     Digital has rescinded **PLA-2009** and offered and demanded the restitution and return of any consideration or purported consideration exchanged thereunder heretofore.

36.     Defendant has failed and refused and continues to fail and refuse to restore to Digital any consideration paid or transferred by Digital to defendant and has failed and refused to accept any return or restitution by Digital of any consideration.

37.     By reason of defendant's failure and refusal to return and restore any and all consideration paid or transferred to it by Digital and to rescind and annul **PLA-2009**, Digital has suffered loss, injury and damage in an amount exceeding $100,000.

WHEREFORE, upon Count II of its Complaint, Digital requests the following relief:

A.     That the Court make and enter its judgment decreeing and declaring that **PLA-2009** is and has been rescinded, annulled and avoided, *ab initio*;

B.   That the Court make and enter its judgment decreeing and declaring that defendant restore to Digital all sums, monies and consideration paid or transferred to defendant by Digital pursuant to **PLA-2009**, together with interests and costs herein expended; and

C.   That the Court make and enter its judgment in favor of Digital and against defendant for such other and further relief including, *inter alia*, Digital's attorneys' fees and expenses actually incurred and expended as may be justified in the premises.

## COUNT III
### (Declaratory Judgment, PLA-2009)

38.   Digital restates and incorporates herein, *seriatim*, the allegations contained in ¶¶ 1-37 inclusive hereinabove.

39.   An actual case and controversy exists between Digital and defendant concerning the existence, validity and effect of **PLA-2009**, and such case and controversy may be adjudicated by this Court consistent with U.S. Const. Art. III, § 2, cl. 1.

40.   Digital has a reasonable apprehension of becoming a defendant in an action to enforce the purported agreement represented by **PLA-2009** and, accordingly, seeks a declaration that **PLA-2009** is void and of no force and effect and/or, in the alternative, that **PLA-2009** has been terminated according to its terms.

WHEREFORE, upon Count III of its Complaint and as provided under 28 U.S.C. §§ 2201 and 2202, Digital requests the following relief:

A.   That the Court make and enter its order and judgment decreeing and declaring that **PLA-2009** is void, annulled and of no force and effect or, in the alternative, that **PLA-2009** has been terminated according to its terms;

B.  That the Court make and enter its order and judgment in favor of Digital and against defendant in an amount equal to Digital's reasonable attorneys' fees, costs and expenses herein incurred and expended; and

C.  That the Digital have and receive such other and further relief as may be justified in the premises.

## JURY DEMAND

Plaintiff Digital Ally, Inc. demands trial, by jury, upon all issues properly triable by the same.

## DESIGNATION OF PLACE OF TRIAL

Digital Ally, Inc. hereby designates Kansas City, Kansas as the place of trial for this matter.

Respectfully submitted,

McDOWELL RICE SMITH & BUCHANAN

*/s/ James F.B. Daniels*
James F.B. Daniels, KS Fed. Bar #70468
A. Jeffrey Misler, KS Bar #16383
605 W. 47th Street, Suite 350
Kansas City, MO 64112
(816) 753-5400 telephone
(816) 753-9996 telecopier
jdaniels@mcdowellrice.com
jmisler@mcdowellrice.com

ATTORNEYS FOR PLAINTIFF