# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DIGITAL ALLY, INC., ) | |
| ) | |
| Plaintiff and Counterdefendant, ) | |
| ) | |
| v. ) | Case No. 09-2292-KGS |
| ) | |
| Z3 TECHNOLOGY, LLC, ) | |
| ) | |
| Defendant, Counterplaintiff, and ) | |
| Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ROBERT HALER, ) | |
| ) | |
| Third Party Defendant. ) | |

# **ORDER**

This matter comes before the Court upon the Motion of Plaintiff Digital Ally, Inc. to Disqualify Defendant's Counsel for Violation of Kan. R. Prof. Conduct 4.2(7) and Prohibiting the Deposition by Defendant of Mr. Hunter Weng Pursuant to D. Kan. Rule 26.2 (Doc. 79) ("Motion to Disqualify").  Defendant Z3 Technology, LLC ("Z3" or "Defendant") has filed a response in opposition, and Plaintiff has filed a reply.  Therefore, the issues are fully briefed, and this Court is prepared to rule.  For the reasons stated below, Plaintiff's Motion to Disqualify is denied.

## I. Background

Plaintiff Digital Ally, Inc. ("Digital" or "Plaintiff") designs, manufactures, and distributes digital video systems.[1] Its principal consumers are law enforcement agencies, private security companies and the United States Armed Forces.[2] On November 1, 2008, Digital and Z3 entered into a Production License Agreement, denominated PLA-2008.10.31 ("PLA -2008").[3] Under the terms of PLA-2008, Z3 would design, manufacture, and license DM355 computer modules to Digital for use in Digital's products, including Digital's "FirstVu" camera.[4] In early 2009, Z3 delivered 1,000 DM355 modules to Digital for which Digital paid $140,000.[5] Digital alleges that each of the DM355 modules was defective and non-conforming to specifications in the contract.[6]

Digital identified Hunter Weng, a former employee, in its Rule 26(a) Initial Disclosures as someone having knowledge of the alleged non-conformity of the DM355 units.[7] Mr. Weng was the lead software engineer for Digital's FirstVu product and responsible for purportedly

---

[1] Compl. (Doc. 1) ¶ 8.

[2] *Id*.

[3] *Id*. ¶ 10 and Ex. 1 thereto.

[4] *See id*. ¶ 11 and Ex. 1 thereto.

[5] *Id.* ¶¶ 13–14.

[6] *Id*. ¶¶ 26–29.

[7] Resp. to Mot. to Disqualify Counsel, Ex. B (Doc. 80-2) (Aff. of Mark E. Wilson) ("Wilson Aff.") ¶ 7.

"debugging" the DM355 modules.[8] The alleged defects listed in Digital's complaint are very similar to a list of "issues" appearing in a May 26, 2009 e-mail from Mr. Weng to various Digital executives, which was produced by Digital to Z3 during discovery in August 2009.[9]

On November 4, 2009, Mark Wilson (Z3's counsel) and Bruno Marchevsky (Z3's Chief Technology Officer) telephoned Mr. Weng to discuss Digital's purported issues with the DM355 module.[10] Mr. Wilson did not seek prior consent from Digital or its counsel. Digital asserts Mr. Wilson violated Rule 4.2 of the Kansas Rules of Professional Conduct and seeks to disqualify him and the firm of Kerns, Frost & Pearlman, LLC from representing Z3. Digital also seeks a protective order prohibiting Mr. Weng's deposition.

## II. Analysis

The Kansas Rules of Professional Conduct ("KRPC") as adopted by the Supreme Court of Kansas are "the applicable standards of professional conduct" for proceedings in federal courts in the district of Kansas.[11] KRPC 4.2 currently states:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.[12]

---

[8] Mem. in Supp. of Mot. to Disqualify, Ex. 3 (Doc. 79-3) (Dep. of Yancy Scroggins) ("Scroggins Dep.") at 85:5–15.

[9] *See* Wilson Aff. (Doc. 80-2) ¶¶ 8–9 and Ex. 1 thereto; Compl. (Doc. 1) ¶ 15.

[10] Wilson Aff. (Doc. 80-2) ¶¶ 12–15.

[11] D. Kan. R. 83.6.1(a).

[12] Kan. S. Ct. R. 226 at R. 4.2.

The Kansas Supreme Court has also adopted the comments accompanying the rules.[13] Comment 7 to Rule 4.2 explains how the rule is to be applied to organizations:

> In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has authority to obligate the organization with respect to the matter or whose act or omission in connection with the matter may be imputed to the organization for purposes of civil or criminal liability. Consent of the organization's lawyer is not required for communication with a former constituent. If a constituent of the organization is represented in the matter by his or her own counsel, the consent by that counsel to a communication will be sufficient for purposes of this Rule. Compare Rule 3.4(f). In communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4.[14]

Effective July 1, 2007, KRPC 4.2 was amended based upon changes made by the American Bar Association ("ABA") to the Model Rules of Professional Conduct ("MRPC").[15] As a result of these changes, Comment 7 to KRPC 4.2 provides for the first time that "[c]onsent of the organization's lawyer is not required for communication with a former constituent."[16] This statement did not appear in Comment 7 prior to 2007, and courts in Kansas had not conclusively determined whether KRPC 4.2 prohibited contact with former employees.[17]

---

[13] Kan. S. Ct. R. 226 (prefatory rule).

[14] Kan. S. Ct. R. 226 at R. 4.2 cmt. 7.

[15] J. Nick Badgerow, *New Horizons: Kansas Adopts Ethics 2000 Changes*, 76 J. Kan. B. Ass'n 20 (June 2007).

[16] *Id.* at 27.

[17] *See Biocare Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 671 (D. Kan. 1998).

For example, in a 1988 opinion, Judge Crow concluded that KRPC 4.2's predecessor, DR 7-104(A)(1), prevented counsel from contacting current or former employees who "have the legal authority to 'bind' the corporation in a legal evidentiary sense, *i.e.,* those employees who have 'speaking authority' for the corporation."[18]

In 1992, the Kansas Bar Association ("KBA") interpreted KRPC 4.2 to prohibit contact with former employees when "(1) the employee's act or omission may impute liability to the corporation or (2) the attorney is seeking information covered by the attorney-client privilege."[19] In taking this position, the KBA disagreed with a 1991 ABA Formal Advisory Opinion on the same subject.[20] The ABA had found that MRPC 4.2 and its comment did not address former employees, and therefore, attorneys could contact all former employees, regardless of their position with the company or ability to impute liability to the company.[21]

In a 1995 opinion, Judge Lungstrum rejected both the *Chancellor* and KBA approaches.[22] Instead, Judge Lungstrum adopted the ABA approach, stating that he was "persuaded, consistent with the majority view, that Rule 4.2 should not be read to prohibit ex parte contact with former employees of an organization party to the litigation that is represented by counsel."[23] In 2000,

---

[18] *Chancellor v. Boeing Co.*, 678 F. Supp. 250, 252–53 (D. Kan. 1988).

[19] *Biocare Med. Techs., Inc.*, 181 F.R.D. at 672 (citing KBA Formal Advisory Opinion 92-07).

[20] *Id*.

[21] *Id*. (citing ABA Formal Advisory Opinion 91-359).

[22] *Aiken v. Business & Indus. Health Group, Inc.*, 885 F. Supp. 1474, 1477–78 (D. Kan. 1995).

[23] *Id*. at 1478.

Judge Lungstrum reiterated the holding from *Aiken* and again held that Rule 4.2 is inapplicable to *ex parte* communications with former employees.[24]

The change to Comment 7 appears to have resolved the different approaches taken by courts in Kansas. The ABA's purpose in amending MRPC 4.2 was to "clarify" that consent of the organization's lawyer is not required for communications with former constituents.[25] Likewise, the change to KRPC 4.2 "clarifies an issue about which there has been extensive litigation."[26] Based upon the clear, unambiguous language of Comment 7, it appears that a lawyer may contact an organization's former constituent without the consent of that organization's lawyer.[27] Accordingly, the Court finds that Mr. Wilson did not violate KRPC 4.2 by contacting Mr. Weng without obtaining consent from Plaintiff's counsel.

The Rule 4.2 analysis, however, does not end there. Although Comment 7 permits a lawyer's *ex parte* contact with an organization's former constituent, it limits the content of the

---

[24] *Centennial Mgmt. Servs., Inc. v. Axa Re Vie*, 193 F.R.D. 671, 683 (D. Kan. 2000); *see also Ramada Franchise Sys., Inc. v. Tresprop, Ltd.*, 75 F. Supp. 2d 1205, 1209 (D. Kan. 1999) ("Rule 4.2 . . . does not prohibit counsel from contacting unrepresented former managerial employees of an opposing party.").

[25] American Bar Association, *Report on the Model Rules of Professional Conduct, Rule 4.2 Reporter's Explanation Memo*, *available at* http://www.abanet.org/cpr/e2k/e2k-report_home.html.

[26] J. Nick Badgerow, *New Horizons: Kansas Adopts Ethics 2000 Changes*, 76 J. Kan. B. Ass'n 20, 27 (June 2007) (citing *Aiken*, 885 F. Supp. at 1477–78).

[27] In a case decided after Comment 7 was amended, Magistrate Judge Bostwick utilized a "flexible" approach that prohibits *ex parte* communications with former constituents if the employer establishes that the former employee was extensively involved in attorney-client communications such that there is a realistic risk that the substance of attorney-client privileged communications might be disclosed in the interview. *Heartland Surgical Specialty Hosp. v. Midwest Div., Inc.*, No.5-2164-MLB-DWB, 2007 WL 2122438, at *2 (D. Kan. July 20, 2007). As will be discussed further, Digital has not shown that Mr. Weng was "extensively" involved in any attorney-client communications

conversation. Since amendment in 2007, Comment 7 has also required, "[i]n communicating with a current or former constituent of an organization, a lawyer must not use methods of obtaining evidence that violate the legal rights of the organization. See Rule 4.4."[28]

KRPC 4.4 provides, "a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person."[29] Efforts by counsel to induce or listen to privileged communications may violate KRPC 4.4.[30] Therefore, although an attorney may have *ex parte* contact with an unrepresented former employee of an organizational party, counsel must "take care not to seek to induce or listen to disclosures by former employees of privileged communications."[31]

In federal court, Rule 501 of the Federal Rules of Evidence dictates how privilege is determined.[32] Pursuant to Rule 501, state law governs the applicability and scope of attorney-

---

[28] Kan. Sup. Ct. R. 226, at R. 4.2 cmt. 7.

[29] *Id*. at R. 4.4

[30] *Aiken*, 885 F. Supp. at 1480 (citing *Dubois v. Gradco Sys., Inc.*, 136 F.R.D. 341, 346–47 (D. Conn. 1991) ("[I]nformation that might be protected under the attorney-client privilege . . . could pose problems with respect to *ex parte* contact with former employees. . . .[P]laintiff's counsel must take care not to seek to induce or listen to disclosures by the former employees of any privileged attorney-client communications to which the employee was privy. . . . [E]fforts by plaintiff's counsel to induce or listen to privileged communications may violate Rule 4.4 of the Model Rules of Professional Conduct, which requires respect for the rights of third persons.")); *see also* ABA Formal Ethics Opinion 91-359 (attempting to induce a former employee to violate the privilege attaching to attorney client communications could violate MRPC 4 .4).

[31] *Aiken*, 885 F. Supp. at 1480; *see also Smith v. Kalamazoo Opthalmology*, 322 F. Supp. 2d 883, 890–91 (W.D. Mich. 2004).

[32] *ERA Franchise Sys., Inc. v. Northern Ins. Co. of New York*, 183 F.R.D. 276, 278 (D. Kan. 1998).

client privilege in diversity actions.[33] The attorney-client privilege is codified in K.S.A. 60-426, and the Kansas Supreme Court has summarized the elements as follows:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[34]

It is not clear to the Court that Mr. Weng possesses any privileged information. Mr. Weng told Mr. Wilson that he had never spoken with any lawyer for Digital or anyone at Digital about the issues in the dispute between Defendant and Plaintiff.[35] During the conversation with Mr. Wilson, Mr. Weng never made any comment suggesting that he had any contact with any lawyer representing Digital in regard to his work on the DM355 module.[36]

Digital's only evidence to support a claim of attorney-client privilege is the following excerpt from the deposition of Stephen Phillips, Digital's Vice President of Engineering.

> Q. Now, at some point in late May, did you become aware that a demand had been made on Digital by lawyers for Z3?
>
> A. Yes, yes, yes. I do recall that. Tom had came to me and said that Z3 was making legal demands on us, yes.

---

[33] *See* Fed. R. Evid. 501 ("[I]n civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law."); *Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368–69 (10th Cir. 1997) (discussing the application to state law versus federal law to the issue of attorney-client and work product privileges); *ERA Franchise Sys., Inc.*, 183 F.R.D. at 278.

[34] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000) (quoting *State v. Maxwell*, 691 P.2d 1316, 1319 (Kan. Ct. App. 1984)).

[35] Wilson Aff. (Doc. 80-2) ¶ 13.

[36] *Id.* ¶ 16.

> Q. All right. Now, was Hunter Weng asked to provide information that would then be used by Digital's counsel in responding to that demand?
>
> A. Yes, because he was -- he was, you know, obviously was the lead engineer or lead software engineer on that project so he was most familiar with the problems that we had on the DM355 module.
>
> Q. And did you have this communication with Hunter Weng yourself?
>
> A. No, I did not.
>
> Q. Do you know who did?
>
> A. It would have been Yancy. I believe it would have been Yancy.
>
> Q. You think it was Yancy Scroggins?
>
> A. Yes.
> . . . .
>
> Q. Now, would anyone, talking to Hunter Weng today, then be able to learn from Hunter what questions he had been asked to answer relating to this litigation?
> . . . .
>
> A. Yes.[37]

This testimony omits sufficient facts to invoke the attorney-client privilege, including whether Digital had retained counsel at the time that Mr. Weng was purportedly approached by Mr. Scroggins, whether Mr. Scroggins had consulted with counsel, the topics of consultation with counsel, and the dates of the conversations. Additionally, Mr. Phillips was not the individual who spoke to Mr. Weng, and it is not clear that he knows what Mr. Scroggins told or

---

[37] Mem. in Supp. of Mot. to Disqualify Counsel, Ex. 2 (Doc. 79-2) at 122:10–124:24 (Dep. of Stephen Phillips).

asked Mr. Weng.[38]  As a result, it is difficult to credit his conclusion that "anyone speaking with Mr. Weng would be able to learn what he had been asked to answer relating to this litigation."

Even assuming that Mr. Weng possesses privileged information, it does not appear that he revealed any such information to Mr. Wilson or Mr. Marchevsky.  During their conversation with Mr. Weng, Mr. Wilson and Mr. Marchevsky inquired about a May 26, 2009 e-mail that Mr. Weng wrote to various Digital executives listing eight "issues" that Digital had with the DM355 module.[39]  The purpose of the telephone call was to inquire what Mr. Weng meant when he wrote the e-mail and to discuss deposition logistics.[40]

Digital does not assert Mr. Weng's e-mail is privileged or protected work product.  Digital produced the e-mail during discovery in this litigation, and it was not labeled privileged, either by Mr. Weng when he wrote it or thereafter by Digital when it was produced.[41]  The Court does not believe that asking Mr. Weng to further explain what he meant about each of the listed issues would reveal privileged information.  Further, it appears that Mr. Weng mostly reiterated what he wrote in his e-mail, and there has been no showing that he actually revealed any privileged information during the telephone call.[42]

It appears that Mr. Wilson was careful not to induce Mr. Weng to reveal any privileged information.  For example, Mr. Wilson specifically inquired whether Mr. Weng had consulted

---

[38] Plaintiff does not provide any evidence from Mr. Scroggins, either by affidavit or deposition testimony, about his purported conversation with Mr. Weng.

[39] Mem. in Supp. of Mot. to Disqualify Counsel, Ex. 1 (Doc. 79-1) (Deposition of Bruno Marchevsky) ("Marchevsky Dep."); Wilson Aff. (Doc. 80-2) ¶ 15 and Ex. 1 thereto.

[40] Marchevsky Dep. (Doc. 79-1) at 119:6–17;  Wilson Aff. (Doc. 80-2) ¶ 14.

[41] Wilson Aff. (Doc. 80-2) ¶ 15 and Ex. 1 thereto.

[42] Marchevsky Dep. (Doc. 79-1) at 119:1–5.

with Digital's counsel and proceeded with the conversation only after Mr. Weng said that he had not spoken with any of Digital's lawyers.[43] Accordingly, based upon the evidence presented, the Court finds that Defendant's counsel did not violate KRPC 4.4.

Digital also seeks a protective order prohibiting Z3 from deposing Mr. Weng. Digital has not established good cause for such an order.

**IT IS THEREFORE ORDERED** that Digital's Motion to Disqualify Defendant's Counsel for Violation of Kan. R. Prof. Conduct 4.2(7) and Prohibiting the Deposition by Defendant of Mr. Hunter Weng Pursuant to D. Kan. Rule 26.2 (Doc. 79) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 3rd day of February, 2010, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge

---

[43] Wilson Aff. (Doc. 80-2) ¶ 13.