**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| DIGITAL ALLY, INC., | ) | |
|     Plaintiff and Counter Defendant, | )<br>)<br>) | |
| v. | )<br>) | |
| Z3 TECHNOLOGY, LLC, | )<br>) | |
|     Defendant, Counter Plaintiff, and<br>    Third-Party Plaintiff, | )<br>)<br>) | Case No. 09-2292-KGS |
| v. | )<br>) | |
| ROBERT HALER, | )<br>) | |
|     Third-Party Defendant. | ) | |

**ORDER**

This matter comes before the Court upon Digital Ally, Inc.'s Motion for Leave to File Third-Party Complaint Against Navigators Insurance Company (ECF No. 125), Navigators Insurance Company's Motion for Leave to Intervene (ECF No. 132), and Navigators Insurance Company's Motion to Strike (ECF No. 135). For the reasons discussed below, the Court denies these motions.

**I.    Background**

Plaintiff Digital Ally, Inc. ("Digital" or "Plaintiff") designs, manufactures, and distributes digital video systems.[1] Its principal consumers are law enforcement agencies, private security companies and the United States Armed Forces.[2] Defendant Z3 Technology, LLC ("Z3" or "Defendant") is a computer engineering firm that designs and manufactures hardware modules for

---

[1] Compl. ¶ 8, ECF No. 1.

[2] *Id*.

use in videographic products. The modules, including related software and design information, are then licensed to Z3's customers.

On November 1, 2008, Digital and Z3 entered into a Production License Agreement, denominated PLA-2008.10.31 ("PLA -2008").[3] Robert Haler ("Haler"), Executive Vice President of Engineering and Production, executed PLA-2008 on behalf of Digital.[4] Under the terms of PLA-2008, Z3 would design, manufacture, and license to Digital certain hardware and software components ("modules") for use in Digital's products.[5] Z3 delivered 1,000 modules to Digital for which Digital paid $140,000.[6]

Shortly after PLA-2008 was executed, Digital adopted and instituted a new "Signature Authorities Policy"[7] whereby any purchase of inventory or capital assets exceeding $250,000 was required to be signed by two officers and/or executives.[8] Digital's "Signature Authorities Policy" purportedly became effective on December 15, 2008.[9]

On January 2, 2009, Haler and Z3 executed a further "Software/Hardware Design and Production License Agreement," denominated PLA-2009.01.02 ("PLA-2009").[10] Haler executed

---

[3] *Id.* ¶ 10, Ex. 1.

[4] *Id*.

[5] *Id*. ¶ 11, Ex. 1.

[6] *Id.* ¶¶ 13–14.

[7] *Id*. ¶ 16, Ex. 2.

[8] *Id*. ¶ 19.

[9] *Id*. ¶ 18, Ex. 2.

[10] *Id*. ¶ 20.

PLA-2009 allegedly on behalf of Digital in his capacity as Executive Vice President of Engineering and Production.[11] PLA-2009 was not signed by any other officers or executives of Digital.[12] In early April 2009, officers and executives of Digital discovered that Haler had purported to enter into PLA-2009 on behalf of Digital in violation of the "Signature Authorities Policy" and subsequently notified Z3 that it should cease all activity with respect to PLA-2009.[13]

In the instant suit, Digital alleges Z3 breached PLA-2008 by delivering non-conforming units to Digital and also seeks a declaration that PLA-2009 is void and of no force and effect because Haler did not have authority to enter into the contract on behalf of Digital.[14] Z3 denies the material allegations of Digital's complaint and, in a Counterclaim, alleges PLA-2009 is a valid and binding contract that was breached by Digital.[15] Additionally, Z3 filed a Third-Party Complaint against Haler for breach of warranty and negligence in representing he had authority to enter into PLA-2009 on behalf of Digital.[16] Z3 asserts the claims against Haler only if PLA-2009 is determined to be void, and thus the claims against Haler are contingent upon the Court finding that PLA-2009 is not binding upon Digital.

On January 6, 2010, Digital tendered the claims asserted against it and Haler to Navigators Insurance Company ("Navigators") under a "Directors and Officers Liability Insurance

---

[11] *Id.*, Ex. 3.

[12] *Id.* ¶ 22, Ex. 3.

[13] *Id.* ¶ 24.

[14] *Id.* ¶¶ 26–40.

[15] Answer and Countercl., ECF No. 11.

[16] Third-Party Compl., ECF No. 75.

Policy"("D&O policy"). On February 26, 2010, Navigators responded with a "reservation of rights" letter in which it acknowledges "potential coverage for the allegations in the Third Party Complaint against Robert Haler in the *Z3 Matter*, subject to a full and complete reservation of rights" but indicates "[n]o coverage is afforded for the Counterclaim filed against Digital Ally, Inc."[17] Navigators also identifies seven potential coverage issues with respect to the claims asserted against Haler.[18] Purportedly, Navigators then selected and engaged counsel to defend Haler from and against Z3's claims.

On December 14, 2010, the parties and a representative of Navigators attended a mediation session with Judge Waxse. Digital contends it was informed, at the close of the mediation proceedings, that Navigators would not and will not pay anything to indemnify Digital or Haler with respect to any of Z3's claims. Subsequent to the mediation, counsel for Navigators sent a letter to Digital's counsel further explaining Navigators' coverage position and continuing to reserve its policy rights and coverage defenses.[19] In this letter, Navigators points out that the claims against Haler are contingent upon a court finding that PLA-2009 is void for lack of authority.[20] Navigators contends that if Haler was acting outside the scope of his capacity or authority with Digital, then his conduct in executing PLA-2009 "appears to fall outside" the available coverage under the D&O policy.[21] Navigators also argues Digital had a "hold harmless" agreement with Haler that prevents

---

[17] Letter from E. Joseph O'Neil to James F.B. Daniels (Feb. 26, 2010), ECF No. 127-2.

[18] *Id.*

[19] Letter from E. Joseph O'Neil to James F.B. Daniels (Dec. 28, 2010), ECF No. 127-3.

[20] *Id.*

[21] *Id.* The D&O policy provides coverage for claims arising from a "Wrongful Act." Insurance Policy § 1.A, ECF No. 127-1. A "Wrongful Act" is defined, in part, as any acts by

4

Haler from becoming "legally obligated" to pay Z3.

Digital now requests leave to file a third-party complaint against Navigators pursuant to Fed. R. Civ. P. 14. In its proposed third-party complaint, Digital seeks a declaratory judgment that insurance coverage exists and damages for Navigators' purported bad faith denial of insurance coverage. Navigators requests leave to intervene in this case pursuant to Fed. R. Civ. P. 24(b) solely for the limited purpose of filing an opposition to Digital's motion and filing a motion to strike Digital's memorandum.

II. **Navigators' Motion for Leave to Intervene (ECF No. 132) and Motion to Strike (ECF No. 135)**

Pursuant to Fed. R. Civ. P. 24(b), a court may permit intervention by anyone who has a claim or defense that shares with the main action a common question of law or fact. Here, Navigators has not satisfactorily shown it is entitled to permissive intervention under Rule 24. Rule 24 appears to envision intervention by a party that will litigate the substance of the underlying claims in the case, not solely for the purpose of filing an opposition to a pending motion for impleader or filing a motion to strike. This is evidenced by Rule 24's requirement that any motion to intervene be accompanied by a *pleading* that sets out the claim or defense for which intervention is sought.[22] Fed. R. Civ. P. 7(a) defines a "pleading" as a complaint, answer, answer to counterclaim, answer to crossclaim, third-party complaint, answer to third-party complaint, and reply to an answer. A motion or response to a motion is not a pleading.[23] Although some courts have permitted filings that

---

any Insured Persons in their *capacity* with Digital. *Id*. § III.R (emphasis added).

Fed. R. Civ. P. 24(c).

[23] *See Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1022, 1029 (D. Kan. 2006) (memorandum supporting a motion is not a pleading under the federal rules); *Crisco v. Lockheed Martin Corp.*, No. 4:10-CV-418-A, 2010 WL 3119170, at *2 n.2 (N.D. Tex. Aug. 4,

are not pleadings,[24] the Court has not found any authority permitting a party to intervene under Fed. R. Civ. P. 24(b) solely to oppose a motion for impleader or file a motion to strike.

The only authority cited by Navigators for such a proposition is *Administrative Committee of the Wal-Mart Associates Health and Welfare Plan v. Willard*.[25] Wal-Mart Stores, Inc. ("Wal-Mart") had intervened in that case so that it could deposit the funds that were the subject of the dispute between the original parties into the court's registry.[26] Wal-Mart was dismissed from the case after it deposited the funds.[27] The defendant subsequently filed a motion for leave to assert a third-party complaint against Wal-Mart.[28] Wal-Mart filed an opposition to the motion, which Navigators contends was considered by the court in denying the defendant's motion.

The undersigned cannot determine the degree to which, if any, such opposition was actually considered by the court. Further, Wal-Mart did not seek leave to file its opposition pursuant to Fed. R. Civ. P. 24 so the court did not address the issue presented by Navigators' motion. As a result, Navigators has not cited any authority holding that Rule 24 allows a party to intervene for the sole purpose of opposing a motion for impleader or filing a motion to strike. Because Navigators has not

---

2010) (response to a motion is not a pleading).

[24] *See, e.g.*, *WJA Realty Ltd. P'ship v. Nelson*, 708 F. Supp. 1268, 1272 (S.D. Fla. 1989) (considering a motion for permanent injunction).

[25] *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511 (D. Kan. 2003).

[26] *See* Order, *Compl. Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511 (D. Kan. 2003) (No. 02-2571-KHV), ECF No. 11.

[27] Order, *Compl. Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 216 F.R.D. 511 (D. Kan. 2003) (No. 02-2571-KHV), ECF No. 27.

[28] *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 512–13.

cited any persuasive authority to support its position, Navigators' Motion for Leave to Intervene and Motion to Strike are hereby denied.

### III. Digital's Motion for Leave to File Third-Party Complaint Against Navigators Insurance Company (ECF No. 125)

Fed. R. Civ. P. 14 (a)(1) permits a defendant to bring a new party into a lawsuit in situations where the new party might be liable to defendant for all or part of plaintiff's claim. If a counterclaim is asserted against a plaintiff, the plaintiff may implead a third party under the same circumstances a defendant is entitled to do so under Fed. R. Civ. P. 14(a).[29]

Rule 14 was designed to reduce multiplicity of litigation and permit a disposition in the main action of a claim for indemnity against a third party.[30] A third-party defendant must be "liable over" to defendant only in sense that the third-party claim is derivative of, and dependent upon, the success of plaintiff's claim; thus, the third-party claim need not be based on same theory as main claim,[31] but the principle of secondary or derivative liability is central.[32] In other words, a third-party claim asserted under Rule 14 must involve liability of the third-party plaintiff (Digital) to the original plaintiff (Z3) that might be passed on to the third-party defendant (Navigators).[33] The burden of

---

[29] Fed. R. Civ. P. 14(b); *Chase Manhattan Bank, N.A. v. Aldridge*, 906 F. Supp. 866, 867 (S.D.N.Y. 1995).

[30] *Thomas v. Malco Refineries, Inc.*, 214 F.2d 884, 886 (10th Cir. 1954); *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 513; *see also Howard v. Ward County*, 418 F. Supp. 494, 507 (D.N.D. 1976) (stating that a "third-party action" is a proceeding in the nature of indemnity or contribution, the purpose of which is to bring into the lawsuit a party who is or may be liable for all or part of a claim).

[31] *Clark v. Assocs. Commercial Corp.*, 149 F.R.D. 629, 634 (D. Kan. 1993).

[32] *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 514.

[33] *See KMMentor, L.L.C. v. Knowledge Mgmt. Prof'l Soc'y, Inc.*, No. 06-2381-KHV, 2006 WL 3759576, at *1 (D. Kan. Dec. 19, 2006).

proving that impleader is proper rests on the third-party plaintiff.[34]

Courts frequently allow a party to implead its insurer as a third-party defendant under Fed. R. Civ. P. 14.[35] The facts of this case are somewhat different than the typical situation in which an insurer is joined because there is no direct claim against Digital for which Digital seeks indemnity from Navigators. Here, Z3 has counterclaimed against Digital for breach of contract and violation of the Nebraska Trade Secrets Act. The D&O policy provides coverage to Digital as an "Insured Entity" only for losses "as a result of a Securities Claim."[36] Thus, there does not appear to be any insurance coverage for the claims asserted by Z3 against Digital nor does Digital appear to seek indemnification for such claims.

Rather, Digital's claim for indemnification arises from the claims asserted by Z3 against Haler. As discussed above, if the Court declares PLA-2009 void, Z3 seeks to recover damages from Haler for breach of warranty and negligence. Under section 1.B of the applicable insurance policy, Navigators is obligated to pay Digital for any "Loss which the Insured Persons," such as Haler, "shall be legally obligated to pay as a result of a Claim" including but not limited to a "Securities Claim"

---

[34] *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 514.

[35] *See, e.g., Gov't Emps. Ins. Co. v. United States*, 400 F.2d 172, 174 (10th Cir. 1968); *Fid. State Bank of Garden City, Kan. v. McNeilus Truck & Mfg., Inc.*, No. 96-1253-JTM, 1997 WL 446422, at *3–4 (D. Kan. July 8, 1997); *Skevofilax v. Quigley*, 810 F.2d 378, 386 n.6 (3d Cir. 1987) (stating that impleader is proper even if insurance carrier has been conducting defense, so long as the carrier contests its indemnification liability) (abrogated on other grounds); *Green v. Shepherd Constr. Co.*, 46 F.R.D. 434, 438 (N.D. Ga. 1969) ("'impleader of a defendant's insurer should be allowed as a matter of course'") (quoting 1A Barron & Holtzoff, Federal Practice and Procedure § 426.2 (1968)); *Knapp v. Hankins*, 106 F. Supp. 43, 48 (E.D. Ill. 1952) (an insured defendant can bring in, as a third-party defendant, an insurance company that disputes the validity of the policy and its duty to defend the action).

[36] Insurance Policy § 1.C, ECF No. 127-1.

to the extent that Digital is required or permitted by law to indemnify the "Insured Person."[37]  On January 21, 2011, Haler sent a letter to Digital demanding indemnification for the claims asserted by Z3 pursuant to his Separation Agreement with Digital.[38]  Haler has not filed a cross claim for indemnification in this case, however.

Under a strict reading of Fed. R. Civ. P. 14, it could be argued that Digital does not satisfy the requirements of impleader because Z3 has not asserted a claim *against Digital* for which Navigators might be secondarily liable.  As discussed above, however, Z3 has asserted a claim against Haler for which Haler might be entitled to indemnification from Digital; in such a case, Digital *might* then have a right to be indemnified by Navigators under the D&O policy.  Under these circumstances, it is not clear to the Court whether the requirements of Rule 14 have been satisfied, and the Court has not found any case law directly on point.  The Court does not need to resolve this issue, however, because it would still deny Digital's motion in the exercise of its judicial discretion, as explained below.

Even if a litigant shows the requirements of Rule 14 have been met, numerous cases recognize that a court still has discretion to grant or deny a motion for impleader.[39]  In exercising its discretion, a court should construe the rule liberally to effectuate its intended purpose of adjudicating the rights of all persons concerned in the controversy in one proceeding and preventing the necessity of trying

---

[37] *Id.* § 1.B.

[38] Letter from Gregory Maher to James F.B. Daniels (Jan. 21, 2011), ECF No. 139-1.

[39] *Farmers & Merchants Mut. Fire Ins. Co. v. Pulliam*, 481 F.2d 670, 673 (10th Cir. 1973); *First Nat'l Bank of Nocona v. Duncan Sav. & Loan Ass'n*, 957 F.2d 775, 777 (10th Cir. 1992); *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 514.

several related claims in different lawsuits.[40] Some of the factors courts have considered when exercising this discretion include: (1) the benefits of a single action versus prejudice to the other party and confusion; (2) the timeliness of the request and prejudice to the plaintiff in delay; (3) whether the main case would unnecessarily expand in scope; (4) whether impleading new parties would unduly delay or complicate the trial; and (5) whether the third-party plaintiff's motion states sufficient grounds for the court to evaluate the propriety of third-party complaints.[41]

Here, the Court finds that Z3 would be unfairly prejudiced if the Court were to grant Digital's motion for impleader. The complaint in this case was filed on June 8, 2009.[42] After multiple extensions, discovery closed on November 30, 2010.[43] The final pretrial conference was scheduled for December 15, 2010.[44] The Court then continued the final pretrial conference so that the parties could focus on participating in a settlement conference with Judge Waxse.[45] After the parties attended the mediation with Judge Waxse, the Court held a status conference to discuss rescheduling the final pretrial conference. During this conference, Digital alerted the Court to the coverage issues with Navigators and its intent to file a motion for impleader. The Court has postponed re-scheduling the final pretrial conference while the instant motion has been pending. Thus, this case has already been delayed by the filing of instant motion. Adding Navigators as a third-party defendant at this

---

[40] *United States v. Acord*, 209 F.2d 709, 712 (10th Cir.), *cert. denied*, 347 U.S. 975 (1954).

[41] *Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan*, 216 F.R.D. at 514.

[42] Compl., ECF No. 1.

[43] ECF No. 117.

[44] *Id.*

[45] ECF No. 121.

stage of the case – after discovery has been completed – would further delay these proceedings.[46]

For example, although the Court is not considering the merits of Navigators' opposition, it is clear Navigators strongly opposes being added as a party to this case. It appears Navigators would move to dismiss any claims asserted against it, including by arguing that a "no action" clause in the policy prevents Digital from asserting a claim at this time. Even if this argument were ultimately shown to be without merit, any such motion would involve time and judicial resources for the Court to reach that conclusion. Further, Navigators would likely seek to re-open any discovery regarding Haler's authority to execute PLA-2009. It is also probable that Navigators and Digital would both seek discovery regarding Navigators' purported bad faith in denying coverage as well as other coverage issues, including the meaning of various terms in the insurance policy.[47] Because adding Navigators would significantly delay this case, Z3 would be unfairly prejudiced if the Court were to grant Digital's motion for impleader.[48]

Digital contends its motion is timely because it was only recently made aware that Navigators intends to provide no coverage or advance the costs for Haler's defense. The Court is not convinced. In its February 26, 2010 letter to Digital, Navigators states no coverage is afforded for the counterclaim filed against Digital and also listed various exclusions or limitations of coverage that

---

[46] *See City of Wichita, Kan. v. Aero Holdings, Inc.*, No. 98-1360-MLB, 2000 WL 1480490, at *2 (D. Kan. Apr. 7, 2000) (permitting impleader would unfairly prejudice plaintiff because it would significantly delay the case).

[47] The Court cannot determine at this point whether extrinsic evidence would be allowed to interpret the terms of the insurance policy.

[48] *See City of Wichita, Kan. v. Aero Holdings, Inc.*, No. 98-1360-MLB, 2000 WL 1480490, at *2 (D. Kan. Apr. 7, 2000) (permitting impleader would unfairly prejudice plaintiff because it would significantly delay the case).

could affect whether coverage exists for the claims against Haler.[49] Thus, when Digital received Navigators' first reservation of rights letter, it should have been aware that Navigators might deny coverage.

The Court does not know exactly what occurred at the mediation to convince Digital that Navigators will deny coverage. In its letter to Digital following the mediation, Navigators elaborates on the coverage issues regarding the claims against Haler, but it is not clear to the Court that Navigators is denying coverage or has even materially changed its position.[50] Further, Navigators' failure to pay any of Haler's defense costs incurred to date appears to be the result of a dispute between Digital and Navigators regarding whether the D&O policy requires Digital to pay the first $100,000 of defense costs before Navigators is obligated to do so, rather than a reflection that Navigators has denied or will deny coverage.[51]

Trial would also be unduly complicated if Navigators were added to this case. Digital's proposed amended complaint raises potentially complicated insurance coverage issues not presently in the case, including whether impleader is proper if there has been no denial of coverage, whether coverage has been denied, whether the "no action" clause in the insurance policy is enforceable, interpretation of the policy terms, the impact of the personal indemnity provisions of Digital's separation agreement with Haler, and whether Navigators has acted in bad faith. These issues are mostly unrelated to the legal and factual issues presently in the case. As a result, there appears to be a lack of similarity between the issues and evidence required to prove the underlying case and the

---

[49] Letter from E. Joseph O'Neil to James F. B. Daniels (Feb. 26, 2010), ECF No. 127-2.

[50] Letter from E. Joseph O'Neil to James F.B. Daniels (Dec. 28, 2010), ECF No. 127-3.

[51] *See* Insurance Policy § 7.E(1), ECF No. 127-1.

third-party claims.

The Court acknowledges there could be some factual overlap between one of the issues raised in Digital's proposed amended complaint and the claims and defenses between the original parties. The facts surrounding Haler's execution of PLA-2009, which are relevant to the claims between the original parties, might also be relevant in determining whether Haler was acting in his "capacity" as that term is used in the D&O policy's definition of "Wrongful Act." However, this appears to be a fairly narrow and discrete issue such that it would not be particularly difficult or burdensome for the parties to conduct related discovery in another action. Additionally, whether Haler had authority to enter into PLA-2009 on behalf of Digital does not necessarily answer whether Haler was acting outside the scope of his "capacity" in determining whether insurance coverage exists.

Further, Digital would not be prejudiced if the Court denied its motion. Digital has not suggested it is prevented from filing a separate declaratory action to determine the existence of insurance coverage. Digital has not sufficiently explained how it would be more efficient or convenient to litigate the issues raised in its proposed amended complaint in this case rather than filing a separate action. Because impleading Navigators would introduce separate and unrelated issues into the case and delay resolution of the existing parties' claims, there does not appear to be any significant convenience to them or the Court by granting Digital's motion. As the Tenth Circuit has stated, "[i]f impleading a third party defendant would require the trial of issues not involved in the controversy between the original parties without serving any convenience, there is no good reason to permit third-party complaint to be filed."[52]

Accordingly,

---

[52] *U.S. Fid. & Guar. Co. v. Perkins*, 388 F.2d 771, 773 (10th Cir. 1968) (internal quotations omitted).

**IT IS THEREFORE ORDERED** that Digital Ally, Inc.'s Motion for Leave to File Third-Party Complaint Against Navigators Insurance Company (ECF No. 125) is hereby denied.

**IT IS FURTHER ORDERED** that Navigators Insurance Company's Motion for Leave to Intervene (ECF No. 132) and Navigators Insurance Company's Motion to Strike (ECF No. 135) are hereby denied.

**IT IS SO ORDERED.**

Dated this 23rd day of February, 2011, at Topeka, Kansas.

s/K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
