**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DIGITAL ALLY, INC., )<br>)<br>Plaintiff and Counterdefendant, )<br>)<br>v. )<br>)<br>Z3 TECHNOLOGY, LLC, )<br>)<br>Defendant and Counterplaintiff. ) | Case No. 09-2292-KGS |

**ORDER**

This matter comes before the Court upon $Z^3$ Technology, LLC's Motion *in Limine* to Bar Evidence and Argument Relating to the Alleged Pink Noise Issue (ECF No. 210); $Z^3$'s Motion *in Limine* to Bar Evidence and Argument Relating to any Testing of the DM355 Module (ECF No. 211); $Z^3$'s Motion *in Limine* to Bar Evidence and Argument Relating to Performance Issues with the DM355 Module (ECF No. 215); and Digital Ally, Inc's Third Motion *in Limine*, Fifth Motion *in Limine* and Sixth Motion *in Limine* (ECF No. 219). On June 22, 2012, the Court held a hearing on the above motions. The Court summarizes its rulings below.

$Z^3$ seeks an order barring any evidence and argument relating to the alleged "pink noise" issue with the DM355 module. PLA-2008 contains a software warranty and a hardware warranty. Digital argues that $Z^3$ breached at least one of the warranty provisions of PLA-2008 by delivering non-conforming DM355 modules. Digital identifies "pink noise" as one of the issues in the DM355 module.

In its motion for summary judgment, $Z^3$ argued that Digital did not comply with the software warranty provisions in PLA-2008 and thus, could not assert a claim for breach of the software warranty or defend against $Z^3$'s claim for breach of PLA-2008 based upon any alleged

software deficiencies. Digital failed to respond to $Z^3$'s motion on this point. Indeed, it was not even clear whether Digital was asserting breach of the software warranty. After considering $Z^3$'s argument and cited authorities, the Court held that "Digital has no claim regarding software issues in the DM355 module."

But whether there was a breach of the hardware warranty remains an issue for trial. And the Court has never resolved whether the alleged "pink noise" issue was a hardware or software issue. This is an issue for the finder of fact, and as a result, the Court will permit Digital to introduce evidence and argument relating to the alleged "pink noise" issue. Accordingly, the Court denies $Z^3$'s Motion *in Limine* to Bar Evidence and Argument Relating to the Alleged Pink Noise Issue (ECF No. 210).

$Z^3$ also seeks an order barring evidence and argument relating to any testing of the DM355 modules. Digital tested at least some DM355 modules in April 2012 – over a year after discovery in this case closed. Although $Z^3$ seeks to exclude testimony regarding *any* testing of the DM355 modules, its primary concern appears to be with testing of the DM355 modules that occurred after discovery was over.

The Court believes that it is improper for Digital to attempt to introduce any evidence, testimony and argument relating to the testing of the DM355 modules that occurred after discovery closed. During the Court's hearing on June 22, 2012, counsel for Digital represented to the Court that he would not attempt to introduce any such evidence or testimony. Accordingly, the Court grants $Z^3$'s Motion *in Limine* to Bar Evidence and Argument Relating to any Testing of the DM355 Module (ECF No. 211) as described herein.

Additionally, $Z^3$ seeks an order barring evidence and argument relating to performance issues with the DM355 modules. For the reasons stated during oral argument, the Court denies

Z's Motion *in Limine* to Bar Evidence and Argument Relating to Performance Issues with the DM355 Module (ECF No. 215).

The Court now turns to Digital's remaining motions *in limine*. In its Third Motion *in Limine*, Digital moves for an order excluding any facts, references, evidence, testimony or opinions concerning or which in any way rely upon Z's "bill of materials," identified as Exhibits 95 and 96. Digital bases its motion on three grounds: (1) the underlying source documents for the bill of materials were not produced as part of $Z^3$'s initial disclosures; (2) the bill of materials is not authenticated; and (3) the bill of materials constitutes hearsay for which there is no exception.

The bill of materials was apparently compiled from (1) quotes from the factory that provided the components listed on the bill of materials or had manufactured modules for $Z^3$ in the past; and (2) excel spreadsheets that contained the pricing for different assemblies manufactured by $Z^3$. The excel spreadsheets were not produced by $Z^3$ as part of its initial disclosures.

Fed. R. Civ. P. 26(a)(1)(A)(ii) states that a party must provide "a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Subsection (iii) further requires a party to provide "a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

Any critique of a party's initial disclosures must also take into consideration the

objectives underlying Rule 26(a)(1).[1] The mandatory disclosure requirements under Rule 26(a)(1) are designed to accelerate the exchange of basic information, help focus the discovery that is needed, facilitate preparation for trial or settlement, and eliminate surprise.[2] The purpose of discovery and initial disclosures is to avoid one side ambushing the other,[3] and the litigants should not indulge in gamesmanship with respect to their disclosure obligations.[4] The Rule 26 disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish."[5]

It is a close call whether the underlying source documents for the bill of materials should have been produced as part of $Z^3$'s initial disclosures. In a broad sense, $Z^3$ is "using" the underlying source documents because its bill of materials incorporates information from these documents. Additionally, the underlying source documents could be considered evidentiary material on which $Z^3$'s damages computation is based. On the other hand, $Z^3$ is not intending to introduce into evidence the underlying source documents and all information that will be introduced at trial and relied upon by $Z^3$ was disclosed to Digital. Thus, Digital cannot reasonably claim any unfair surprise. Although the underlying source materials might have been helpful to Digital, this is not a case where $Z^3$ was engaged in gamesmanship with respect to its disclosure

---

[1] *Lobato v. Ford*, No. 05-cv-01437-LTB-CBS, 2007 WL 2593485, at *5 (D. Colo. Sept. 5, 2007).

[2] Fed. R. Civ. P. 26(a) advisory committee notes to 1993 amendments; *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 94 (S.D. Iowa 1992).

[3] *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 2009 WL 3672373, at *13 (D.N.M. Sept. 24, 2009).

[4] Fed. R. Civ. P. 26(a) advisory committee notes to 1993 amendments.

[5] *Id.*

obligations.

The Court does not need to resolve whether $Z^3$ should have disclosed the underlying documents at part of its disclosures because even assuming such an obligation, the Court would not exclude the bill of materials under Rule 37.

Under Rule 37(c), a party that fails to comply with its disclosure obligations under Rule 26(a) or (e) is precluded from relying on that witness's testimony "unless the failure [to identify] was substantially justified or harmless."[6] Rule 37(c) is designed to prevent the "sandbagging" of an opposing party with new evidence and prevent gamesmanship.[7] "[R]efusing to admit evidence that was not disclosed in discovery is a drastic remedy and will apply only in situations where the failure to disclose represents a flagrant bad faith and callous disregard of the rules."[8]

The Tenth Circuit has held that a district court "need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."[9] Nevertheless, a district court should consider four factors when exercising its discretion: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to which introducing such testimony

---

[6] Fed. R. Civ. P. 37(c)(1).

[7] *See CSC Holdings, Inc. v. Berube*, No. 01-1650 DRH MLO, 2004 WL 3541331, at (E.D.N.Y. July 7, 2004) (Rule 37(c)(1) is "designed to avoid . . . gamesmanship . . . [and] . . . to provide a strong inducement for disclosure of Rule 26(a) material.") (internal citations omitted).

[8] *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999).

[9] *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999).

would disrupt the trial; and (4) the moving party's bad faith or willfulness."[10]

Although it was incumbent on $Z^3$ to fully and timely comply with Rule 26's disclosure requirements, Digital shares culpability for any prejudice it claims to have suffered by $Z^3$'s alleged non-disclosure.  In response to a request for production of documents, $Z^3$ produced the bill of materials in October 2009 -- well prior to the initial deadline to complete discovery in this case.[11]  During the December 2009 deposition of Mr. Marchevsky, Digital's counsel inquired about the bill of materials and learned that it was compiled from other sources of information that had not been produced.  But Digital never moved to compel any allegedly deficient responses or serve a request for production of these underlying source documents.  In a prior order, the Court suggested to Digital that it could file a motion to compel if it believed there were deficiencies in $Z^3$'s production.[12]  Rather than take advantage of these remedies, Digital chose to do nothing.  Thus, any prejudice is of its own making.[13]

---

[10] *Id*.

[11] The deadline to complete discovery was originally November 24, 2009.  Scheduling Order, ECF No. 26.  The deadline to complete discovery was then extended several times.  Discovery closed on November 30, 2010.  Order, ECF No. 117.

[12] In its first motion for partial summary judgment, Digital criticized $Z^3$ for not producing the underlying source documents for the bill of materials.  Pl.'s Mem. in Supp. of First Mot. for Partial Summ. J at 30, ECF No. 88.  Because the bill of materials had been produced in response to a Rule 34 request and Digital did not specifically argue that the underlying source documents should have been produced as part of $Z^3$'s initial disclosures, the Court suggested that Digital file a motion to compel.

[13] *See Foreman v. Am. Road Lines, Inc.*, 623 F. Supp. 2d 1327, 1330-31 (S.D. Ala. 2008).   In *Foreman,* the defendant had not complied with the expert disclosure obligations under Rule 26.  The plaintiff was aware of the deficiencies with defendant's expert's report but did not file a motion to compel or take any other action to resolve the deficiencies.  Instead, the plaintiff remained silent for months, then abruptly filed his objection in the hope of "parlaying an innocuous, easily-corrected omission into disallowance of [the expert's] testimony in its totality."  This type of "gamesmanship," the court ruled, flouted the "spirit of cooperation and fair play that

Moreover, the Court does not believe that Digital has been prejudiced. Digital deposed $Z^3$'s principals – Bruno Marchevsky and Aaron Caldwell – and questioned them about the bill of materials. Digital had an opportunity to inquire about the sources of information contained in the bill of materials.

Further, the Court does not believe that introduction of the bill of materials or any testimony related thereto would disrupt the trial. The bill of materials was produced in October 2009 and has been the subject of inquiry at depositions. In short, the bill of materials has been a part of this case since 2009.

Lastly, there is nothing indicating to the Court that $Z^3$ was acting in bad faith. Indeed, $Z^3$ fully disclosed that it relied upon other documents in compiling the bill of materials. The Court does not believe that $Z^3$ was attempting to "hide the ball" or engage in any gamesmanship.

Weighing the above factors, the Court finds that $Z^3$'s purported non-disclosure was harmless. Accordingly, the Court will not exclude any facts, references, evidence, testimony or opinions concerning or which in any way rely upon the "bill of materials" based upon $Z^3$'s purported non-disclosure. The Court will defer ruling upon whether the bill of materials is properly authenticated and/or constitutes hearsay until hearing the foundation laid by $Z^3$ at trial. Accordingly, Digital's Third Motion *in Limine* is denied without prejudice.

In its Fifth Motion *in Limine*, Digital moves for an order excluding $Z^3$'s expert's report and any exhibits, testimony, or opinions that refer to the report. Digital argues that the report is hearsay under Fed. R. Evid. 801. On its exhibit list, $Z^3$ indicates only that it "may" attempt to

---

animates Rule 26." Because any prejudice to the moving party was largely self-inflicted, the court refused to exclude the expert's testimony at trial.

offer the report into evidence. The Court will address the report's admissibility if and when $Z^3$ attempts to introduce it into evidence. Digital's Fifth Motion *in Limine* is denied without prejudice.

In its Sixth Motion *in Limine*, Digital seeks an order excluding the facts, evidence, testimony, and opinions to be offered by $Z^3$'s damages expert, Craig Chance.

Under Nebraska law, lost profits are based upon the calculation of lost net profits, not lost gross profits. "[W]here a plaintiff presents evidence of only gross profits and fails to provide evidence of expenses and overhead costs from which net profits can be calculated, the plaintiff has failed to present sufficient evidence of lost profits."[14]

In Mr. Chance's report, he indicates that "the main portion of $Z^3$'s variable overhead is incurred during the design process, which in the case of the DM365 was complete. The variable overhead during the design process consists of payroll expenses and professional fees." The Court previously denied summary judgment on $Z^3$'s claim for lost profit damages because the Court could not determine what overhead costs, if any, should be subtracted from the calculation. However, the Court does not believe that this is a basis for excluding all of Mr. Chance's testimony at trial. The Court reminds $Z^3$ that an expert's testimony at trial is limited to the opinions expressed in his or her report or deposition unless the failure to disclose the information previously was substantially justified or harmless.[15] Accordingly, Digital's Sixth Motion *in Limine* is denied.

---

[14] *Home Pride Foods, Inc. v. Johnson*, 634 N.W.2d, 774, 783 (Neb. 2001).

**IT IS SO ORDERED**.

Dated this 26th day of June, 2012 at Topeka, Kansas.

s/K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge