**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DIGITAL ALLY, INC., ) | |
| ) | |
| Plaintiff and Counterdefendant, ) | |
| ) | |
| v. ) | Case No. 09-2292-KGS |
| ) | |
| Z3 TECHNOLOGY, LLC, ) | |
| ) | |
| Defendant and Counterplaintiff. ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Digital Ally, Inc.'s Motion to Amend or Alter Judgment Entered July 3, 2012 and for New Trial or, in the Alternative, Remittitur (ECF No. 287). For the reasons stated below, the motion is denied.

**I.   Background**

On November 1, 2008, Plaintiff Digital Ally, Inc. ("Digital") and $Z^3$ Technology, LLC ("$Z^3$") entered into a contract entitled Production License Agreement PLA-2008.10.31 ("PLA-2008"). PLA-2008 called for $Z^3$ to design a DM355 module for use in Digital's products and then manufacture and deliver to Digital 1,000 units along with the necessary software. On January 2, 2009, Digital and $Z^3$ entered into a second contract entitled Software/Hardware Design and Production License Agreement ("PLA-2009"). Under PLA-2009, $Z^3$ agreed to design, manufacture, and deliver to Digital DM365 hardware modules and related software components. Robert Haler, Digital's former Executive Vice President of Engineering and Production, executed the contract on behalf of Digital.

On June 8, 2009, Digital filed this lawsuit against $Z^3$ asserting that $Z^3$ breached PLA-2008 by delivering non-conforming DM355 modules.[1]  Digital also sought a declaration that PLA-2009 was rescinded and/or was void because Haler lacked authority to execute the contract on behalf of Digital.[2]

On November 4, 2009, $Z^3$ filed an Amended Counterclaim asserting three claims against Digital.[3]  In Count I, $Z^3$ asserted that Digital breached PLA-2009; in Count II, $Z^3$ asserted that Digital breached PLA-2008; and in Count III, $Z^3$ asserted that Digital misappropriated $Z^3$'s trade secrets in violation of the Nebraska Trade Secrets Act.[4]

On December 9, 2009, $Z^3$ filed a Third-Party Complaint against Haler.[5]  $Z^3$'s Third-Party Complaint had two counts.  In Count I, $Z^3$ asserted a breach of warranty claim against Haler.  $Z^3$ alleged that by signing PLA-2009, Haler expressly or impliedly warranted to $Z^3$ that he had authority to obligate Digital on the contract by his signature.  In essence, Count I of $Z^3$'s Third-Party Complaint against Haler sought alternative relief to Count I of $Z^3$'s Counterclaim against Digital.  In other words, if the Court determined that PLA-2009 void for lack of authority, then $Z^3$ sought breach-of-contract damages against Haler personally.

In Count II, $Z^3$ asserted a tort claim of negligence against Haler.  $Z^3$ asserted that Haler (1) negligently failed to comply with Digital's Signature Authorities Policy; (2) negligently represented to $Z^3$ that he had authority to bind Digital to the contract by his signature; and/or (3) negligently led $Z^3$ to believe, by his words and/or actions, that he had authority to bind Digital to

---

[1] Compl., ECF No. 1.

[2] *Id.*

[3] Am. Countercl., ECF No. 62.

[4] *Id.*

[5] Third-Party Compl., ECF No. 75.

the contract by his signature.[6] As a component of its damages, $Z^3$ sought the attorney fees and expenses that it incurred in defending against Digital's claim for rescission of PLA-2009 based upon Haler's alleged lack of authority.[7]

In May 2011, Haler and $Z^3$ entered into a Settlement and Release Agreement ("Settlement Agreement") whereby Haler and $Z^3$ settled $Z^3$ claims for $137,500.[8] The Settlement Agreement recites that $Z^3$ incurred attorney fees and expenses in litigating Digital's claims against $Z^3$. It further provides that Haler would deliver $137,500 in payment of $Z^3$'s "Attorneys Fee Damages" and that $Z^3$ would receive no payment under the Settlement Agreement for its contract damages against Digital.

On March 29, 2012, the Court granted in part $Z^3$'s Motion for Summary Judgment on Count I of its Counterclaim against Digital.[9] The Court determined that PLA-2009 was a valid and enforceable agreement that was breached by Digital. The Court determined as a matter of law that $Z^3$ was entitled to recover $175,000 in unpaid engineering fees and $270,000 for unpaid royalties from Digital as a result of Digital's breach. The Court was unable to resolve on summary judgment all of the damages sought by $Z^3$ and concluded that $Z^3$'s claim for lost profits caused by Digital's failure to order a certain minimum number of modules was an issue for the finder of fact at trial.

---

[6] *See* Pretrial Order at 17, ECF No. 148.

[7] *Id.* at 35.

[8] Settlement & Release Agreement, ECF No. 216.

[9] Mem & Order, ECF No. 194.

$Z^3$ had also sought summary judgment on Count II of its Counterclaim against Digital. The Court denied in part this aspect of $Z^3$ motion because the Court was unable to determine as a matter of law which party breached PLA-2008.

This case was tried to a jury in late June and early July 2012. The jury awarded $100,000 to $Z^3$ for its lost profits on PLA-2009.[10] As to PLA-2008, the jury determined that $Z^3$ breached the hardware warranty and awarded $30,000 to Digital.[11] The jury also determined that Digital breached PLA-2008 by failing to pay $15,000 in fees that were due on the contract and awarded $15,000 to $Z^3$.[12]

In the current motion, Digital contends that the amount of the judgment entered against it on PLA-2009 should be reduced by $137,500 --- the amount of $Z^3$'s settlement with Haler --- to avoid $Z^3$ receiving a double recovery for the same injury.[13] Digital also asserts that it is entitled to a new trial, or in the alternative, remittitur because the jury's verdict in favor of both Digital and $Z^3$ for breach of the same contract, PLA-2008, is irreconcilably inconsistent.

**II.     Analysis**

    A.     <u>Digital Waived Any Affirmative Defense of Setoff by Failing to Preserve the Issue in the Court's Pretrial Order.</u>

Fed. R. Civ. P. 8(c) states that in responding to a pleading, a party must affirmatively state any avoidance or affirmative defense. Rule 8 enumerates some, but not all, affirmative defenses, including accord and satisfaction and payment. A setoff based upon a settlement with

---

[10] Jury Verdict, ECF No. 267.

[11] *Id.*

[12] *Id.*

[13] Digital has made this argument to the Court on two prior occasions, and the Court has rejected it both times.

4

a third-party is also an affirmative defense.[14] The purpose of pleading an affirmative defense is to provide the opposing party with fair notice.[15]

The Court entered a final Pretrial Order in this case on May 9, 2011.[16] A pretrial order supersedes the pleadings and controls the subsequent course of litigation.[17] Failure to preserve an affirmative defense in the final pretrial order is considered a waiver of the defense.[18]

Digital argues that its defense of setoff, based upon $Z^3$'s settlement with Haler, was preserved in the Court's Pretrial Order. To support its argument, Digital relies upon the section entitled "Defenses," which includes the following sentence: "$Z^3$'s claims are barred, in their entirety, by its own prior and supervening breaches of contract and by Digital's rights of setoff and/or recoupment."[19]

This statement reflects that Digital was seeking to setoff any damages that Digital incurred as a result of $Z^3$'s purported breach of the contracts, not the amount of any settlement with Haler. This is evidenced by the specific reference to $Z^3$'s breaches of contract in the sentence discussing setoff. Then, in the section of the Pretrial Order entitled "Essential Elements of Digital's Affirmative Defenses," Digital describes $Z^3$'s purported "supervening breach" but

---

[14] *Roberts v. Korn*, 420 F. Supp. 2d 1196, 1199 (D. Kan. 2006) (contentions that plaintiff had been fully compensated by other defendants is an affirmative defense); *Joseph V. Edeskuty & Assocs. v. Jacksonville Kraft Paper Co.*, 702 F. Supp. 741, 749 (D. Minn. 1988) (setoff is an affirmative defense).

[15] *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1257 (D. Kan. 2011).

[16] Pretrial Order, ECF No. 148.

[17] *Weyerhaeuser Co. v. Brantley*, 510 F.3d 1256, 1267 (10th Cir. 2007); *Hullman v. Bd. of Trustees of Pratt Cmty. Coll.*, 950 F.2d 665, 667 (10th Cir. 1991).

[18] *Kay-Cee Enters., Inc. v. Amoco Oil Co.*, 45 F. Supp. 2d 840, 846 (D. Kan. 1999) (defendant waived affirmative defense by failing to preserve issue in pretrial order and failing to timely seek amendment); *see also Creative Consumer Concepts, Inc. v. Kreisler*, 563 F.3d 1070, 1076 (10th Cir. 2009) ("The general rule is that a party waives its right to raise an affirmative defense at trial when the party fails to raise the defense in its pleadings."); *Roberts*, 420 F. Supp. 2d at 1199 (defendant waived affirmative defense by failing to raise it until after trial was concluded).

[19] Pretrial Order at 20, ECF No. 148.

does not refer to a setoff from a potential settlement with Haler. There is no reference to a setoff from a potential settlement with Haler in any portion of the final Pretrial Order, including the legal or factual issues to be resolved. As a result, the Court concludes that the "setoff" claimed by Digital referred to damages incurred as a result of $Z^3$'s purported breaches of the contracts and did not provide $Z^3$ with fair notice of any setoff defense based upon any possible future settlement with Haler.

The final Pretrial Order was entered on May 9, 2011, before the settlement with Haler was completed. At the very least, Digital was on notice as of June 22, 2011 – less than a month after the Settlement Agreement was executed -- that Haler and $Z^3$ had reached a settlement.[20] But Digital never moved for an order amending the final Pretrial Order to include setoff from the settlement with Haler as an affirmative defense.

The Court concludes that the affirmative defense of setoff as it relates to the Settlement Agreement between $Z^3$ and Haler was waived. Digital simply waited too long before attempting to raise the defense in this case.

    B.    <u>Even Assuming Digital Did Not Waive its Affirmative Defense of Setoff, Digital Has Not Demonstrated It is Entitled to a Setoff.</u>

Even if the Court did not find waiver, it would not reach a different result. Digital cites Nebraska and Kansas law to support its argument that it is entitled to a full dollar-for-dollar setoff for everything paid to settle $Z^3$'s claims against Haler. The Court does not need to decide whether Nebraska or Kansas law applies to this issue because the law appears to be the same in both jurisdictions.

As summarized by the Kansas Supreme Court

> Kansas has not varied from a rule that limits a plaintiff to only one recovery for a wrong. This rule has been applied throughout the years in

---

[20] Joint Mot. to Dismiss Third-Party Action Pursuant to Settlement by Third Party Def. Robert Haler, ECF No. 164.

> situations where partial payments have been made by multiple tortfeasors. A pro tanto credit has been granted to prevent a plaintiff from receiving a double recovery.[21]

In other words, under the "one satisfaction rule," when the conduct of multiple defendants results in a single injury with common damages, and one of the defendants settles with the plaintiff, the amount of the settlement is credited against the amount that may be recovered from the non-settling defendants.[22]

Similarly, in Nebraska, "a party may not have double recovery for a single injury, or be made 'more than whole' by compensation which exceeds the actual damages sustained. . . . Where several claims are asserted against several parties for redress of the same injury, only one satisfaction can be had."[23] In other words, a plaintiff shall not be compensated with an award that, when combined with the settlement, exceeds the amount that it could prove.[24]

Thus, the issue is whether the Settlement Agreement between Haler and $Z^3$ compensated $Z^3$ for the same damages that were awarded to $Z^3$ for Digital's breach of PLA-2009.[25] In determining whether the Settlement Agreement and the judgment on PLA-2009 represent common damages, the Court may look to the text of the Settlement Agreement.[26]

---

[21] *York v. InTrust Bank, N.A.*, 962 P.2d 405, 432 (Kan. 1998).

[22] *See Hess Oil Virgin Islands Corp. v. UOP, Inc.*, 861 F.2d 1197, 1208 (10th Cir. 1988).

[23] *Vowers & Sons, Inc. v. Strasheim*, 576 N.W.2d 817, 825 (Neb. 1998).

[24] *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc*., No. 4:01CV603, 2004 WL 627077, at *8 (D. Neb. Mar. 29, 2004).

[25] *See Hess Oil Virgin Islands Corp.*, 861 F.2d at 1208.

[26] *See id.*; *Friedland v. TIC - The Industrial Co.*, 566 F.3d 1203, 1210–11 (10th Cir. 2009).

In its Third-Party Complaint, $Z^3$ sought damages against Haler on two claims: (1) breach of warranty; and (2) negligence.[27]  As an element of its damages, $Z^3$ sought to recover its costs and attorney's fees and expenses incurred in defending against Digital's claim for rescission of PLA-2009.[28]  More specifically, $Z^3$ contended that Haler's negligent failure to comply with Digital's Signature Authorities Policy caused $Z^3$ to incur extensive attorney's fees and expenses in defending Digital's suit to rescind or declare PLA-2009 void.

The Settlement Agreement between $Z^3$ and Haler states that $Z^3$ incurred attorneys' fees and expenses in litigating Digital's claims against $Z^3$.[29]  The Settlement Agreement further provides that Haler would deliver $137,500 in payment of $Z^3$'s "Attorneys Fee Damages" and that $Z^3$ would receive no payment under the Settlement Agreement for its contract damages against Digital.  According to the terms of the Settlement Agreement, the payment to $Z^3$ was to compensate $Z^3$ solely for its attorney fees, and $Z^3$ received nothing in settlement for its breach-of-contract damages

In contrast, the Court and jury awarded damages against Digital to compensate $Z^3$ for Digital's breach of PLA-2009.  In other words, $Z^3$ was awarded damages to put it in the same position it would have been had Digital performed PLA-2009.  $Z^3$ did not seek attorney fees from Digital, and $Z^3$ was not awarded any attorney fees from Digital for Digital's breach of PLA-2009.  Thus, under the terms of the Settlement Agreement, the amount paid by Haler

---

[27] *See also* Pretrial Order at 17, ECF No. 148.

[28] *Id*. at 15, 35.

[29] Settlement & Release Agreement, ECF No. 216.

compensated $Z^3$ for different damages than the damages assessed against Digital for breach of PLA-2009.[30]

Digital argues that regardless of how the parties allocated the payment from Haler in the Settlement Agreement, Digital is entitled to a setoff because there has been no finding establishing that $Z^3$ was actually entitled to recover attorney fees from Haler. In other words, Digital apparently contends that the Court or jury must have found for $Z^3$ as to each element of its negligence claim against Haler.

Digital cites no authority for the proposition that it is entitled to a credit unless $Z^3$ proves that it would have prevailed against Haler had the claim not settled. To be sure, Digital cites authority indicating that a court or jury must make certain factual findings before a party can be awarded attorney fees on a negligence claim.[31] But the cases cited by Digital are in a different procedural posture than this litigation and are merely reciting the elements that must be proven to support an award of attorney fees at trial or on summary judgment. It is undisputed that if Haler and $Z^3$ had not settled, then $Z^3$ would have had to prove the elements necessary to recover attorney's fees from Haler. But the issue here is whether Digital is entitled to a setoff for the amount of the settlement with Haler. The cases cited by Digital do not address setoff under the "one satisfaction rule" and have no relevance in determining what, if anything, $Z^3$ must demonstrate to defeat Digital's setoff defense.

Adopting Digital's argument would put $Z^3$ in the position of having to prove each element of its negligence claim against Haler despite having settled the claim. The Court disagrees with Digital's approach. Rather, the Court believes that as the party asserting an

---

[30] *Cf. Friedland v. TIC - The Industrial Co.*, 566 F.3d 1203, 1210–11 (10th Cir. 2009) (concluding in part that the settlement agreement compensated plaintiff for the same damages because the settlement agreement did not allocate the damages).

[31] *See, e.g.*, *Essex Contracting, Inc. v. Jefferson Cnty.*, 277 S.W.3d 647, 657-58 (Mo. 2009).

affirmative defense, Digital has the burden of proving that it is entitled to the setoff. In other words, Digital has the burden to demonstrate that the settlement amount from Haler and the judgment against Digital represent a single injury with common damages and/or that $Z^3$ was precluded from seeking attorney's fees from Haler under Nebraska or Missouri law. Digital has failed to do so.

In both Nebraska and Missouri,[32] a plaintiff may recover his attorneys' fees and expenses as a result of litigation with a separate party caused by a defendant's tort under the collateral litigation rule or exception.[33] The Nebraska Supreme Court has phrased the rule as follows:

> "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."[34]

Missouri courts have summarized the law as follows:

> "[T]he general rule in Missouri is that attorneys' fees are recoverable only when a statute specifically authorizes recovery or when attorneys' fees are provided for by contract." However, an exception to the rule is often called the "collateral litigation" exception. "Where the natural and proximate result of a wrong or breach of duty is to involve the wronged party in collateral litigation, reasonable attorneys' fees necessarily and in good faith incurred in protecting himself from the injurious consequence thereof are proper items of damages." For the collateral litigation exception to be applicable, the plaintiff must have incurred attorneys' fees in a different cause of action, involving a different party, caused by a breach of duty by the defendant.

---

[32] Digital contends that either Nebraska or Missouri law applied to $Z^3$'s claims against Haler. The Court does not need to resolve this issue because the result is the same under either state's law.

[33] *Woollen v. State*, 593 N.W.2d 729, 744 (Neb. 1999) (relying on the Restatement (Second) of Torts and concluding that plaintiff's attorney's fees for defending a suit occasioned by defendant's tort are compensable damages); *St. Louis Cnty. v. Taylor-Morley, Inc.*, 923 S.W.2d 507, 512 (Mo. Ct. App. 1996) (recognizing collateral litigation exception to American Rule barring recovery of attorney fees in tort cases); *see also Dairy Farmers of Am., Inc. v. Travelers Ins. Co.*, 391 F.3d 936, 944–45 (8th Cir. 2004) (recognizing the availability of attorney fees as an element of damages for certain tort actions in Missouri).

[34] *Woollen*, 593 N.W.2d at 744 (quoting Restatement (Second) of Torts § 914).

> The exception for collateral litigation proximately caused by the tortious acts is also merely a matter of common sense in accordance with traditional principles allowing recovery of damages proximately caused by the negligent act. The plaintiffs must prove the breach of duty, and further must prove the damages proximately flowing from the breach. There is no hypertechnical formula about fees that may be recovered as an element of damages; neither is it an esoteric concept embedded in the shrouds of legal history. It is simply a logical exception to the general rule, and the Restatement has sought to state the principle.[35]

$Z^3$'s allegations against Haler fall within the collateral litigation exception. $Z^3$ alleged that Haler negligently failed to comply with Digital's Signature Authorities Policy; (2) negligently represented to $Z^3$ that he had authority to bind Digital to the contract by his signature; and/or (3) negligently led $Z^3$ to believe, by his words and/or actions, that he had authority to bind Digital to the contract by his signature. As result, $Z^3$ contends that it incurred extensive attorney fees and expenses in defending Digital's suit to rescind or declare PLA-2009 void.

In an attempt to demonstrate that $Z^3$ could not recover attorney fees, Digital argues that neither Missouri nor Nebraska permit the recovery of attorney fees upon claims of simple negligence of the kind asserted by $Z^3$ against Haler. In support of this argument, Digital cites *Gurley v. Montgomery First National Bank*.[36] In that case, the Missouri Court of Appeals addressed an exception for reimbursement of attorney fees ordered by a court of equity to balance the harms/benefits and determined that a simple negligent misrepresentation claim was not sufficiently unusual to invoke the exception. But *Gurley* does not apply here. It does not address or even mention the collateral litigation exception.

Moreover, the authorities from Missouri that address the collateral ligation exception do not prohibit its application to claims of ordinary negligence. For example, in *Collier v. Manring*,

---

[35] *Collier v. Manring*, 309 S.W.3d 848, 853 (Mo. Ct. App. 2010) (internal citations omitted).

[36] *Gurley v. Montgomery First Nat'l Bank*, 160 S.W.3d 863, 871 (Mo. Ct. App. 2005).

the Missouri Court of Appeals described the elements as follows: a plaintiff must show (1) a breach of duty; (2) that undertaking the collateral litigation was the natural and proximate result of the defendant's alleged wrong or breach of duty; (3) that the fees were necessarily and in good faith incurred to protect the plaintiff from injury; and (4) that the amount of the fees (attributable specifically to the litigation to correct any legal problem caused by the alleged breach of duty) was reasonable in light of the circumstances and necessities of the situation.[37] There is no suggestion by the Court of Appeals that a plaintiff must show conduct beyond a breach of duty in an ordinary negligence case.

Further, Digital cites no Nebraska law supporting its argument. None of the Nebraska authorities reviewed by the Court suggest that the collateral litigation exception does not apply to ordinary negligence claims. A plaintiff must demonstrate simply that a "tort of another" caused it to incur attorney's fees in another cause of action against a different defendant.[38]

Digital also contends that for litigation to be "collateral" it must be brought in a separate case. The Court does not believe the applicability of the collateral litigation exception turns on whether $Z^3$ asserted its claim against Haler as a third-party complaint in this lawsuit or filed a separate suit against Haler. Indeed, in *Collier*[39] – a case cited by Digital -- the Missouri Court of Appeals rejected the very argument being made by Digital. In *Collier*, the Court of Appeals held that the district court erred in determining that litigation was not collateral simply because the counts were contained in one petition, rather than two separate cases.[40] The issue is whether Haler's alleged breach caused $Z^3$ to incur attorney fees in a different cause of action, involving a

---

[37] *Collier v. Manring,* 309 S.W.3d 848, 854 (Mo. Ct. App. 2010).

[38] *Woollen*, 593 N.W.2d at 744.

[39] *Collier*, 309 S.W.3d at 853-54.

[40] *Id.*

different party.  $Z^3$ alleged that Haler's negligence caused $Z^3$ to incur attorney fees to defend against a separate action (declaratory action to declare PLA-2009 void) brought by a different party (Digital).

Relying on *Tetherow v. Wolfe*, Digital also apparently asserts that under Nebraska law, before $Z^3$ can recover its attorney fees, $Z^3$ must demonstrate that it "lost" the litigation with Digital because of Haler's alleged negligence.[41]  But *Tetherow* does not stand for this proposition.  In *Tetherow*, the party seeking attorney fees had lost the prior litigation, but the Nebraska Supreme Court in no way indicated that this was a prerequisite to recovery and made only a passing reference to this fact.

Digital has not demonstrated that it is entitled to a setoff for the amount of the settlement with Haler. The Court believes that the settlement agreement with Haler compensated $Z^3$ for different damages than those awarded to $Z^3$ for Digital's breach of PLA-2009.

C. <u>There is No Basis to Disturb the Jury Verdict on the $15,000 Award to $Z^3$ for Breach of PLA-2008.</u>

Digital also asserts that it is entitled to a new trial, or in the alternative, remittitur because the jury's verdict in favor of both Digital and $Z^3$ for breach of the same contract (PLA-2008) is irreconcilably inconsistent.

This issue turns on whether the jury returned a general verdict or a special verdict.  The hallmark of a general verdict is that it requires the jury to announce the "ultimate legal result of each claim."[42]  In other words, a general verdict "permits the jury to decide who wins."[43]  A

---

[41] *Tetherow v. Wolfe*, 392 N.W.2d 374, 379 (Neb. 1986).

[42] *Johnson v. Ablt Trucking Co., Inc.*, 412 F.3d 1138, 1142 (10th Cir. 2005).

[43] *Id.*

special verdict, by contrast, presents the jury with specific questions of fact.[44] After the jury returns its verdict, the court applies the law to the facts found by the jury and enters judgment accordingly.[45]

The Court concludes the jury returned a general verdict in this case. The verdict form required the jury to identify only whether a party breached the contract, and if so, the amount of damages.[46] The jury determined the ultimate result of each claim without any further work by the Court other than the entry of judgment on the verdict. The verdict form in this case is similar to the one at issue in *Thompson v. State Farm Fire & Casualty Co.*, which the Tenth Circuit held to be a general verdict.[47] In *Thompson*, the first part of the verdict form asked the jury whether "the plaintiffs . . . should recover on their contract claim against the defendant."[48] The Court determined that this question was plainly a general verdict, and subsequent questions regarding damages and bad faith were accompanying interrogatories.[49] Similar to the verdict in *Thompson*, the verdict form in this case established which party should recover.

As conceded by Digital in its motion, a party waives a claim of inconsistent verdicts based on a general jury verdict form under Fed. R. Civ. P. 49(b) if not raised before the jury is discharged.[50] Here, counsel for Digital never objected to the verdict form prior to the jury being

---

[44] *Id.*

[45] *Id.*

[46] Jury Verdict, ECF No. 267.

[47] *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 945 (10th Cir. 1994).

[48] *Id.* at 945.

[49] *Id.* at 944-45.

[50] *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 851 (10th Cir. 2000); *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 911 (10th Cir. 2004); Fed. R. Civ. P. 49(b)(4).

discharged.  Accordingly, the Court concludes that Digital has waived any argument that the verdict was irreconcilably inconsistent.

Further, the Court does not believe there is anything inconsistent about the jury's verdict. The jury found that Digital breached PLA-2008 by not paying the $15,000 contract balance and that $Z^3$ breached the hardware warranty with regard to the delivered modules – two separate provisions of the contract.  The jury found that Digital could recover for breach of warranty, but that it had to pay the balance owed on the contract.

As Digital points out, before a party can recover for breach of contract, it must demonstrate that it substantially performed its obligations under the contract.  Digital argues that the jury could not possibly have concluded that $Z^3$ substantially performed under PLA-2008 because it also found that $Z^3$ breached the hardware warranty.  Jury Instruction No. 11 informed the jury that substantial performance meant that $Z^3$ made a good faith effort to live up to its part of the contract and any deviations were relatively minor and unimportant.[51]  The jury appears to have concluded that $Z^3$ made a good faith effort to perform the contract and that the deviations show by Digital at trial were relatively minor in the jury's view.  Indeed, the jury awarded Digital only 19% of the total $155,000 contract price.  In short, the jury reasonably could have concluded that both $Z^3$ and Digital substantially performed under the contract but were still liable to each other for breach of minor performance obligations.

Accordingly,

**IT IS THEREFORE ORDERED** that Digital Ally, Inc.'s Motion to Amend or Alter Judgment Entered July 3, 2012 and for New Trial or, in the Alternative, Remittitur (ECF No. 287) is hereby denied.

---

[51] Jury Instruction No. 11, ECF No. 262.

**IT IS SO ORDERED**.

Dated this 14th day of September, 2012 at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
